


is not true and correct to the same extent provided in such representation or warranty and that they have made due and diligent inquiry as to the matters that are the subject of such representations and warranties, including due inquiry of appropriate members of management of the Companies including Grant Russell, James Witcher, Sam Spradlin, Bo Maurer and the plant managers at each of the Companies' facilities, and nothing has come to their attention during the course of such inquiry or otherwise which would cause such party in the exercise of due diligence, to believe that such representation and warranty is not true and correct in all material respects.

9.3.3 For purposes of determining whether there is an inaccuracy in, action, omission or statement of facts inconsistent with, any representation or warranty, the terms "material," "materially," and "material adverse effect," when applicable to such representation and warranty shall mean claims which total $20,000.00 for each individual claim or group of claims arising from the same or similar events, conditions or causes or conduct for which indemnification is being sought.

9.3.4 For purposes of calculating satisfaction of the "basket" and "cap" described in this Section 9, claims which do not meet the materiality limit provided in Section 9.3.3 shall be considered.

9.4 **Indemnification Procedures.**

9.4.1 If any third party shall notify either party to this Agreement (the "Indemnified Party") with respect to a matter (a "Third Party Claim") which may give rise to a claim for indemnification against the other party (the "Indemnifying Party") under Section 9 of this Agreement, then the Indemnified Party shall promptly notify the Indemnifying Party thereof in writing within the time period set forth in Section 10.1 of this Agreement. The Indemnifying Party shall have the right to defend the Indemnified Party against the Third Party Claim with counsel of its choice.

9.4.2 In no event shall any Indemnified Party consent to the entry of judgment or enter into any settlement with respect to any Third Party Claim without the prior written consent of the Indemnifying Party, which consent shall not be unreasonably delayed or withheld. Each party to this Agreement shall provide to the other party on request all information and documentation reasonably necessary to support and verify any Losses which give rise to such claim for indemnification and shall provide reasonable access to all books, records and personnel in their possession or under their control which would have a bearing on such claim.

9.4.3 In the event that any Indemnified Party has a claim against any party obligated to provide indemnification pursuant to Section 9 hereof which does not involve a Third Party Claim, the Indemnified Party shall promptly notify the Indemnifying Party of such claim, specifying the nature of such claim and the amount or the estimated amount thereof to the extent then feasible.

9.4.4 Upon making any payment to an Indemnified Party for any




indemnification claim made hereunder, the Indemnifying Party shall be subrogated, to the extent of the payment, to any rights the Indemnified Party may have against any other persons or entities with respect to the subject matter underlying the indemnification claim. This Section 9.4.4 shall not apply to Third Party Claims which are settled pursuant to Section 9.4.2.

**9.4.5** Each Indemnified Party shall be obligated in connection with any claim for indemnification under Section 9 to use all reasonable efforts to mitigate Losses upon and after becoming aware of any event that could reasonably be expected to give rise to the Losses.

**10. LIMITATION ON INDEMNIFICATION.**

**10.1** Term. Purchaser's right to indemnification under Section 9 shall apply only if written notice setting forth in reasonable detail the nature of the claim for which indemnification has been sought has been delivered by hand or by mail by Purchaser to the Owners not later than two (2) years after the Closing Date; except that with respect to any liability or expense covered by Section 9.1.4, such right shall apply until the expiration of the applicable statutes of limitation or any extension thereof and with respect to any liability or expense covered by Section 9.1.6, such right shall apply for six (6) years after the Closing Date. The Owners' right to indemnification under Section 9 shall apply only if written notice setting forth in reasonable detail the nature of the claim for which indemnification has been sought has been delivered by Owners to the Purchaser not later than two (2) years after the Closing Date.

**10.2** Basket. The indemnities shall not apply to any cost, expense, damage, liability, loss or deficiency until the aggregate of all costs, expenses, damages, liabilities, losses or deficiencies ("Losses") exceed $75,000, whereupon the Owners will be liable for the full amount of all Losses suffered by Buyer in excess of such amount up to the limit specified in Section 10.3. The foregoing basket shall not apply to breaches of Section 3.9, 3.24 or 3.29, or to the Purchase Price Adjustment provisions of Section 1.3.

**10.3** Cap. The maximum amount of indemnification owed to either party by the other shall be the sum of Eighteen Million Dollars ($18,000,000). This maximum amount shall in no way limit Owners' obligation to Purchaser under the indemnities set forth in Section 9.1.4, 9.1.5, the Purchase Price Adjustment provisions of Section 1.3, or for fraud or willful misrepresentations.

**10.4** **Extension of Certain Claims.** If prior to the expiration of any of said periods set forth in Section 10.1 above, the Indemnified Party shall give written notice to the Indemnifying Party identifying any covenant, agreement, representation or warranty which is inaccurate or has otherwise been breached, setting forth in reasonable detail facts and circumstances showing that the Indemnified Party has suffered or incurred or may suffer or incur any damage, liability, loss or deficiency arising out of or resulting from such inaccuracy or breach, then the indemnity contained in Section 9 shall survive with respect to such covenant, agreement, representation or warranty until the



Indemnifying Party has indemnified and saved and held the Indemnified Party harmless therefrom or such matter is otherwise resolved.

10.5 **Limitation on Types of Damages**. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, NO PARTY SHALL BE LIABLE FOR SPECIAL, PUNITIVE, EXEMPLARY, INCIDENTAL, CONSEQUENTIAL OR INDIRECT DAMAGES, OR LOST PROFITS, WHETHER BASED ON CONTRACT, TORT, STRICT LIABILITY, INDEMNITY, OTHER LAW OR OTHERWISE AND WHETHER OR NOT ARISING FROM THE OTHER PARTIES' SOLE, JOINT OR CONCURRENT NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT; PROVIDED, HOWEVER, THAT THIS LIMITATION ON DAMAGES SHALL NOT APPLY IN THE EVENT OF FRAUD BY EITHER PARTY.

10.6 **Further Matters**. Except as otherwise specifically provided in Section 9, no liability will be recoverable by or on behalf of Purchaser in respect of any representation, warranty or covenant to the extent that the Purchaser has already recovered an amount for such breach as a result of the Purchase Price Adjustment, or by the Purchaser or the Owners to the extent the event giving rise thereto was specifically disclosed in this Agreement or was caused by compliance with the requirements of this Agreement.

11. **DISPUTES**.

11.1 **Dispute Resolution**. Subject to the provisions of Section 11.5 any dispute arising out of or relating to this Agreement, including, but not limited to, claims for indemnification pursuant to Section 9 shall be resolved in accordance with the procedures specified in this Section 11, which shall be sole and exclusive procedures for the resolution of any such disputes. Notwithstanding the foregoing, any dispute regarding the Closing Balance Sheet shall be resolved by the resort to the provisions of Section 1.3.

11.2 **Negotiation Between Executives**. The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation between the appointed representative of the Owners and executives of Purchaser who, if possible, are at a higher level of management than the persons with direct responsibility for administration of this Agreement. Any party may give the other party written notice of any dispute not resolved in the normal course of business. Within fifteen (15) days after delivery of the notice, the receiving party shall submit to the other a written response. The notice and response shall include (a) a statement of each party's position, and (b) the name and title of the executive who will accompany the representative. Within thirty (30) days after delivery of the disputing party's notice, the representatives of Owners and Purchaser shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored.

**11.2. 1** If the matter has not been resolved by these persons within sixty (60) days of the disputing party's notice, or if the parties fail to meet within thirty (30) days, either party may initiate mediation as provided hereinafter.




11.2. 2 All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of the Federal Rules of Evidence and State Rules of Evidence.

11.3 **Mediation**. If the dispute has not been resolved by negotiation as provided herein, the parties shall endeavor to settle the dispute by mediation under the then current Center for Public Resources ("CPR") Model procedure for Mediation of Business Disputes. The neutral third party will be selected from the CPR Panels of Neutrals, with the assistance of CPR, unless the parties agree otherwise.

11.4 **Litigation**. If the dispute has not been resolved by non-binding means as provided herein within 90 days of the initiation of such procedure, either party may initiate litigation (upon 30 days written notice to the other party); provided, however, that if one party has requested the other to participate in a non-binding procedure and the other has failed to participate, the requesting party may initiate litigation before expiration of the above period.

11.5 **Choice of Forum and Venue.** All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York. The Owners and the Purchaser further agree that any dispute arising out of this Agreement may be decided by either the state or federal court sitting in New York City, New York. The Owners and the Purchaser shall each submit to the jurisdiction of those courts and agree that service of process by certified mail, return receipt requested, shall be sufficient to confer said courts with in personam jurisdiction.

11.6 **Waiver of Jury Trial.** IN THE EVENT THAT ANY DISPUTE SHALL ARISE BETWEEN THE PARTIES HERETO, AND LITIGATION ENSUES, WITH RESPECT TO ANY LITIGATION ARISING OUT OF THIS AGREEMENT OR ANY RELATED TRANSACTION, THE PARTIES EXPRESSLY WAIVE ANY RIGHT THEY MAY HAVE TO A JURY TRIAL AND AGREE THAT ANY SUCH LITIGATION SHALL BE TRIED BY A JUDGE WITHOUT A JURY.

11.7 **Provisional Remedies**. The procedures specified in this Section shall be the sole and exclusive procedures for the resolution of disputes between the parties arising out of or relating to this Agreement; provided, however, that either party, without prejudice to the above procedures, may file a complaint (for statute of limitations or venue reasons) or to seek preliminary injunction or other provisional judicial relief, if in its sole judgment such action is necessary to avoid irreparable damage or to preserve the status quo. Despite such action the parties will continue to participate in good faith in the procedures specified in this Section.

11.8 __Tolling Statute of Limitations__. All applicable statutes of limitation and defenses based upon the passage of time shall be tolled while the procedures specified in this Section are pending. The parties will take such action, if any required to effectuate such tolling.

11.9 __Performance to Continue__. Each party is required to continue to perform its obligations under this Agreement pending final resolution of any dispute arising out of or relating to this Agreement.

12. __COOPERATION__.

Each party will give prompt written notice to the other of any claim which the party discovers or of which it receives notice after the Closing and which might give rise to a claim against the other under Section 9 hereof, stating the nature, basis and amount thereof. The Indemnified Party shall have the right to be represented, at its own expense, by advisory counsel and accountants, in case of any claim by a third party, any suit, any claim by any governmental body, or any legal, administrative or arbitration proceeding, with respect to which the Indemnified Party may have liability under the indemnity provisions contained in Section 9 hereof. The Indemnified Party shall make available to the Indemnifying Party, its attorney and accountants, at all times during normal business hours, all books and records in its possession of the Partnership or any of the Companies relating to such suit, claim or proceeding, and Purchaser and the Owners will render to each other such assistance as may reasonably be required of each other in order to insure proper and adequate defense of any such suit, claim or proceeding. The Indemnifying Party shall have the right initially to defend against any such suit, claim or proceedings, but if the Indemnifying Party shall elect not to so defend, then Indemnified Party shall be permitted to defend against such suit, claim or proceeding. If Purchaser or the Owners shall desire to effect a compromise or settlement of any such suit, claim or proceeding and any other party hereto shall refuse to consent to such compromise or settlement, then any party desiring to effect such compromise or settlement (in writing) shall be excused from the defense and such party's liability under Section 9 herein with respect to such suit, claim or proceeding shall be limited to the amount so offered in compromise or settlement.

13. __TERMINATION, AMENDMENTS AND WAIVER__.

13.1 __Termination__. This Agreement may be terminated at any time prior to the Closing:

13.1.1 By mutual consent of Purchaser and the Owners, including without limitation in the situation where both Purchaser and the Owners mutually agree that any necessary regulatory approval may not be obtained; or

13.1.2 By Purchaser in the event of a Significant Material Adverse Change prior to Closing. "Significant Material Adverse Change" shall mean a change in the business, assets or prospects of the Partnership that would prevent Purchaser from

 

using the business and assets of the Partnership as contemplated by Purchaser on the date hereof and which cannot be resolved by Purchaser by resort to the indemnification provisions contained herein.

13.1.3 By either Purchaser or Owners if the conditions precedent to their respective obligations contained in Sections 7.1 or 7.2 hereof have not been met in all material respects through no fault of the terminating party by February 28, 2006.

13.2 **Effect of Termination**. If this Agreement is terminated and the transactions contemplated hereby are not consummated as described above, this Agreement shall become void and of no force and effect and no party hereto shall thereafter have any liability hereunder to the other parties hereto except for the provisions of Section 6.4 above.

13.3 **Amendment**. This Agreement and the Schedules hereto may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.

14. **GENERAL PROVISIONS.**

14.1 **Notices**. All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or on the third day following deposit with the United States Post Office if mailed by registered or certified mail (return receipt requested) to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

If to Purchaser:

Illinois Tool Works Inc.
Attention: Hugh J. Zentmyer, Executive Vice President
3600 West Lake Avenue
Glenview, Illinois 60026

With copies to:

Illinois Tool Works Inc.
Attention: Corporate Secretary
3600 West Lake Avenue
Glenview, Illinois 60026

If to the Owners:

Tech Spray Management Company, L.L.C.
P.O. Box 949
Amarillo, Texas 79105-0949




Richard and Rita Russell
P.O. Box 3036
Carefree, Arizona 85377

With copies to:

Jeff Shrader
Sprouse Shrader Smith P.C.
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008

14.2 **Delivery.** This Agreement and any signed agreement or instrument entered into in connection herewith, and any amendments thereto or hereto, to the extent signed and delivered by means of a facsimile machine, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effects as if they were the original signed version thereof delivered in person.

14.3 **Interpretive Provisions.**

**14.3.1** Whenever the context may require, a pronoun includes the corresponding masculine, feminine, and neuter forms. All references herein to Sections, Schedules and Exhibits are references to Sections of and Schedules and Exhibits to this Agreement unless the context requires otherwise. All attached Schedules and Exhibits shall be deemed incorporated herein as if set forth in full herein; and, unless otherwise defined therein, all terms used in any Schedule or Exhibit have the meaning ascribed to that term in this Agreement. The words "hereof," "herein," and "hereunder" and words of similar import when used in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. Unless otherwise expressly provided herein, any statute defined or referred to herein or in any contract, agreement or instrument that is referred to herein, means the statute as from time to time amended, modified or supplemented, including by succession of comparable successor statutes. The Section headings of this Agreement are for the purpose of convenience only and were not intended to define or limit the contents of said Sections.

14.3.2 This Agreement shall be deemed to have been drafted by each of the parties, and no provision of this Agreement shall be interpreted in favor of or against any party because that party or that party's legal representative drafted that provision or this Agreement.

14.4 **Entire Agreement.** This Agreement (including the Schedules and Exhibits, and the other instruments delivered in connection herewith) and the Side Letter dated January 13, 2006 constitute the entire agreement and supersedes all other prior agreements and undertakings, both written and oral, among the parties, or any of them, with respect to the

subject matter hereof and may not be modified, amended or terminated except by a written agreement specifically referring to this Agreement and signed by all of the parties against which enforcement is sought.

14.5 **Rights of Third Parties.** Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon any other person or entity any rights or remedies under or by reason of any provision of this Agreement.

14.6 **Assignment.** This Agreement shall not be assigned or transferred by operation of law or otherwise (except to heirs or legatees of the Owners);

14.7 **Waiver.** No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver and no such waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

14.8 **Severability.** The provisions of this Agreement shall be deemed severable and if any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the Transaction contemplated hereby is not affected in any manner adverse to any party. Upon such determination that any term or other provision in this Agreement is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the extent possible.

14.9 **Parent Guaranty.**

(a) The Purchaser is ultimately the wholly-owned subsidiary of Illinois Tool Works, Inc., a Delaware corporation (the "Parent"). The Parent unconditionally guarantees the due and punctual payment of all of the Purchaser's payment obligations set forth in this Agreement. This guaranty is an irrevocable guaranty of payment (and not just of collection) and shall continue in effect notwithstanding any extension or modification of the terms of this Agreement or any assumption of any guaranteed obligations by any other party.

(b) The Parent also unconditionally guarantees the due and punctual performance and observance by Purchaser of all of the Purchaser's obligations under the terms of this Agreement.

(c) The payment obligations of the Parent under Section 14.9(a) and the performance obligations of the Parent under Section 14.9(b) shall be absolute and unconditional irrespective of the validity, legality or enforceability of this Agreement or any other document related hereto, and shall not be affected by or contingent upon (i) the liquidation or dissolution of, or the merger or consolidation of the Purchaser into or with any corporation, or any sale or transfer by the Purchaser of all or any part of its property



or assets, (ii) the bankruptcy, receivership, insolvency, reorganization or similar proceedings involving or affecting the Purchaser, or (iii) any modification, alteration, amendment or addition of or to this Agreement.

**14.10** **Counterparts**. This Agreement may be executed in two or more counterparts that together shall constitute a single Agreement.

**[signatures on following page]**




**IN WITNESS WHEREOF,** Purchaser and the Owners have caused this Agreement to be signed, all as of the date first written above.

**ITW TECH SPRAY L.L.C.**

By: Gary Swink
Title: Attorney in Fact

**PARENT**

**ILLINOIS TOOL WORKS INC.**

By: Gary Swink
Title: Attorney in Fact

**OWNERS**

Mr. Richard G. Russell

Ms. Rita Russell

**TECH SPRAY MANAGEMENT COMPANY, L.L.C.**

Name:
Title:





**IN WITNESS WHEREOF,** Purchaser and the Owners have caused this Agreement to be signed, all as of the date first written above.

**ITW TECH SPRAY L.L.C.**

By: Gary Swink
Title: Attorney in Fact

**PARENT**

**ILLINOIS TOOL WORKS INC.**

By: Gary Swink
Title: Attorney in Fact

**OWNERS**

Mr. Richard G. Russell

Ms. Rita Russell

**TECH SPRAY MANAGEMENT COMPANY, L.L.C.**

Name:
Title: